UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 20 CV 62381

SONIA BADILLO,

        Plaintiff,

v.

THE SAM PERKS COMPANY, LLC D/B/A
PERKS HOSPITALITY MANAGEMENT,
SAMUAL J. PERKS,
DREW FONTENOT,

        Defendants.
_____/



FILED BY_____D.C.
FEB 09 2021
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

## DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT AND COUNTERCLAIM

DEFENDANTS, THE SAM PERKS COMPANY, LLC D/B/A PERKS HOSPITALITY MANAGEMENT, SAMUAL J. PERKS, and DREW FONTENOT, hereby files Answer and Affirmative Defenses to the Complaint filed by the PLAINTIFF, SONIA BADILLO, together with Counterclaim, and in support thereof, states as follows:

### DEFENDANTS' ANSWER

1. DEFENDANTS do not dispute that this Court has jurisdiction under the Fair Labor Standards Act, but DEFENDANTS deny that PLAINTIFF has a valid claim against DEFENDANTS, or that PLAINTIFF is entitled to damages or relief from DEFENDANTS under the Fair Labor Standards Act.

2. DEFENDANTS cannot affirm or deny PLAINTIFF'S residency. PLAINTIFF was previously employed by DEFENDANT.

3. Deny.

4. THE SAM PERKS COMPANY, LLC D/B/A PERKS HOSPITALITY MANAGEMENT is a Florida Limited Liability Company, operating in South Florida, engaged in hotel management services, and formerly employed PLAINTIFF.

5. Admitted

6. Denied.

7. Denied. DEFENDANT is not aware of the described circumstances.

8. Denied. PLAINTIFF SONIA BADILLO worked as an administrative assistant manager overseeing housekeeping activities. PLAINTIFF was not employed as a general laborer, and was not responsible for housekeeping unless intermittently and irregularly arising from unusual circumstances.

9. Denied.

10. Denied.

11. Denied.

12. Denied.

13. Denied that PLAINTIFF is entitled to any relief as alleged.

14. DEFENDANTS are not able to confirm or deny.

## COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT ("FLSA")

### ALL DEFENDANTS

15. DEFENDANTS respond as set forth in paragraphs 1-14 above.

16. Denied that PLAINTIFF is entitled to any relief as alleged.

17. Denied that PLAINTIFF is entitled to the demanded judgement.

## AFFIRMATIVE DEFENCES

1. DEFENDANT's business operates exclusively domestically within Florida in Broward and Palm Beach Counties. PLAINTIFF did not engage in the "production of goods for commerce" because any goods that PLAINTIFF handled in the course of PLAINTIFF'S employment "had already reached their ultimate consumer (DEFENDANT) and did not, therefore, qualify as goods for commerce under the FLSA;" and, PLAINTIFF did not "engaged in commerce" because PLAINTIFF work was primarily local in nature. PLAINTIFF brief interactions with a relatively small number of out-of-state guests did not "constitute a substantial, regular, continued, or recurrent part of [the] PLAINTIFF' duties that would establish individual coverage under the FLSA." *Davis v. Patel*, Civil No. 3:14-cv-764 (M.D. Tenn. Aug. 5, 2016)

2. DEFENDANTS are not a covered enterprise under the FLSA as DEFENDANT'S gross annual revenues were verifiably less than $500,000.00 per year, DEFENDANT'S did not instruct or authorize PLAINTIFF to engage in interstate commerce as defined by FLSA, and did not engage in interstate commerce with PLAINTIFF.

3. PLAINTIFF was the only employee ever issued a phone and computer tablet. However, PLAINTIFF has claimed that the devices actually belong to PLAINTIFF, even after being provided evidence to the contrary. DEFENDANT has no record or recollection of issuing any of the other tools or supplies mentioned in the complaint to PLAINTIFF or assigning the use of such tools or supplies for employment related functions. DEFENDANT has no record or recollection of intentionally or knowingly purchasing and/or utilizing tools, supplies, and/or equipment manufactured outside Florida in furtherance of DEFENDANT'S business within the meaning of the FLSA.

4. DREW FONTENOT is a resident of Broward County, Florida and was, and now is, a manager of DEFENDANT THE SAM PERKS COMPANY, LLC, is a legally registered manager of THE SAM PERKS COMPANY, LLC D/B/A PERKS HOSPITALITY MANAGEMENT. DREW FONTENOT does not exert "actual operational control" of THE SAM PERKS COMPANY, LLC, does not hire or terminate staff outside of clerical assistance performed for SAMUAL J. PERKS, does not supervise employees or daily operations, does not have signing rights or account access to the THE SAM PERKS COMPANY, LLC financial accounts, and the economic reality of DREW FONTENOT'S involvement with THE SAM PERKS COMPANY, LLC does not make FONTENOT an "employer" of the PLAINTIFF within the meaning of 29 U.S.C. §203(d) and/or within the meaning of the FLSA.

   *Gray v. Powers*, 673 F.3d 352 (5th Cir. 2012)

   162 Lab. Cas. P 35997

   18 Wage & Hour Cas. 2d

   (BNA) 1441

5. PLAINTIFF has been paid in full for all payment obligations of DEFENDANT relating to employment earnings. In furtherance of demonstrating DEFENDANT'S full observation of payment obligations, PLAINTIFF executed a Severance Agreement affirming the same (Exhibit A). Additionally, PLAINTIFF is on record with the Broward County Sheriff's Office (Exhibit B), SMS and social media messaging, and knowingly recorded phone calls stating a variety of inconsistent claims for payments allegedly due to PLAINTIFF from DEFENDANT, and/or acknowledging that no outstanding obligation on the part of DEFENDANT exists. DEFENDANT'S have retained and can

produce records of each payment made to PLAINTIFF, which correspond equally to the timecards PLAINTIFF submitted to DEFENDANT while employed by DEFENDANT in PLAINTIFF'S own handwriting or electronically from devices controlled by PLAINTIFF.

## **RESERVATION OF RIGHTS**

DEFENDANT'S hereby gives notice that DEFENDANTS intend to rely on such other defenses and affirmative defenses as may become available or apparent during the course of discovery, and, thus, reserves the right to amend this Answer and serve such defenses and otherwise supplement the foregoing affirmative defenses as may be allowed by this honorable Court.

WHEREFORE, DEFENDANTS, THE SAM PERKS COMPANY, LLC D/B/A PERKS HOSPITALITY MANAGEMENT, SAMUAL J. PERKS, and DREW FONTENOT, respectfully request that this honorable Court, strike DREW FONTENOT from the Complaint, issue summary judgement on the matters of law that DEFENDANT have made obvious by this Answer, that costs and fees be taxed against PLAINTIFF, SONIA BADILLO, and in favor of DEFENDANTS, and that all other just and proper relief in favor of DEFENDANTS, and against PLAINTIFF, SONIA BAILLO, be granted.

## **COUNTERCLAIM**

NOW COMES DEFENDANTS/COUNTER-PLAINTIFF, THE SAM PERKS COMPANY, LLC D/B/A PERKS HOSPITALITY MANAGEMENT, SAMUAL J. PERKS, and DREW FONTENOT, pursuant to Rule 13 of the Federal Rules of Civil Procedure, hereby files its Counterclaim against PLAINTIFF/COUNTER-DEFENDANT, SONIA BADILLO, and, in support thereof, states as follows:

## THE PARTIES, JURISDICTION AND VENUE

1. This is a compulsory counterclaim under Rule 13 of the Federal Rules of Civil Procedure arising out of the transactions and occurrences that are the subject of PLAINTIFF'S Complaint in this action.

2. As this counterclaim is so related to the claims set forth in COUNTER-DEFENDANT'S Complaint, this Court has supplemental jurisdiction over this counterclaim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b), (c) and (d).

4. COUNTER-PLAINTIFF is a Florida Limited Liability Company that is based and primarily operates in Broward County, Florida.

5. As alleged in the Complaint in this matter, COUNTER-DEFENDANT claims to be a resident of Broward County, Florida.

## FACTUAL BACKGROUND

6. On or about May 20, 2020, COUNTER-DEFENDANT indicated to COUNTER-PLAINTIFF, SAMUAL J. PERKS, that COUNTER-DEFENDANT could no longer functionally use COUNTER-DEFENDANT'S mobile phone due to damage to the device. COUNTER-DEFENDANT requested that PERKS purchase an additional business account mobile line and mobile device so that contact between the two could occur if necessary.

7. COUNTER-PLAINTIFF agreed on the condition that COUNTER-DEFENDANT would make monthly payments for the monthly services charges, and would take over the line and account, return the device, or pay off the balance due for the device and any pending

service charges upon departure from employment. The agreement was further memorialized in the "Severance Agreement" (Exhibit A).

8. COUNTER-DEFENDANT'S employment was terminated "for cause" under the terms of a valid Employment Agreement on August 18, 2020. In an effort to assist COUNTER-DEFENDANT with the transition, THE SAM PERKS COMPANY, LLC offered a voluntary severance agreement which would pay COUNTER-DEFENDANT more than wages due, and offer extended use of Company property past the date of termination, contingent upon compliance with the terms of the agreement.

9. COUNTER-DEFENDANT accepted the Severance Agreement, and represented to COUNTER-PLAINTIFF that the execution of the agreement was in good faith.

10. In the late evening of August 20, 2020, COUNTER-DEFENDANT assembled company property valued at $3,086.95 and removed it to a location unknown to COUNTER-PLAINTIFF, without COUNTER-PLAINTIFF'S authorization or awareness. Inventory was performed by a neutral third party to improve validity, in accordance with Company policy. Witness statements were recorded, verifying that it was in fact COUNTER-DEFENDANT who personally removed the property from Company premises.

11. Upon the expiration of the deadline for COUNTER-DEFENDANT to perform required obligations under the Severance Agreement, COUNTER-DEFENDANT informed PERKS that the company property would not be returned.

12. All conditions precedent to the filing of this action have been performed, have occurred or have been waived.

**COUNT I**

**TORTIOUS INTERFERENCE WITH COUNTER-PLAINTIFF'S BUSINESS**

COUNTER-PLAINTIFF'S re-plead, re-allege, and incorporate by this reference paragraphs one (1) through twelve (12) of Counterclaim as previously pled herein.

13. As a direct and proximate result of COUNTER-DEFENDANT'S intentional, unjustified, and unauthorized removal and retaining of property known to COUNTER-DEFENDANT to be the property of COUNTER-PLAINTIFF'S business, COUNTER-PLAINTIFF has been damaged..

14. As a direct result of COUNTER-DEFENDANT'S unauthorized use of COUNTER-PLAINTIFF's business resources and products intended for customer use, COUNTER-PLAINTIFF has been damaged.

15. As a direct result of COUNTER-DEFENDANT'S failure to return COUNTER-PLAINTIFF's mobile device and tablet computer as previously agreed by COUNTER-DEFENDANT, COUNTER-PLAINTIFF incurred costs to date in the amount of $390.72, which costs otherwise would not have been the obligation of COUNTER-PLAINTIFF.

**Count II. Slander Per Se**

COUNTER-PLAINTIFF re-alleges and incorporates by reference paragraphs 1 through 15 above as if fully set forth herein.

16. Since 2007, COUNTER-PLAINTIFF, as a respected real estate agent, business consultant, and hospitality business expert, has cultivated and maintained relationships with clients in South Florida and Illinois as to that business.

17. COUNTER-PLAINTIFF has cultivated and maintained such relationships through continuous, high-quality service, which has resulted in advantageous business relationships and repeat business.

18. COUNTER-DEFENDANT maliciously uttered falsehoods and fostered the dissemination of per se slanderous statements regarding COUNTER-PLAINTIFF and his businesses.

19. COUNTER-DEFENDANT, in furtherance of COUNTER-DEFENDANT's coordinated endeavor cause harm to COUNTER-PLAINTIFF, interfered with COUNTER-PLAINTIFF'S business relationships by disseminating false information concerning COUNTER-PLAINTIFF.

   1. COUNTER-DEFENDANT stated to third-parties, without limitation, that:

      a. COUNTER-PLAINTIFF is engaged in the sale and distribution of illegal narcotics;

      b. COUNTER-PLAINTIFF embezzled thousands of dollars from charitable organizations;

      c. COUNTER-PLAINTIFF operates unsafe and/or unclean properties with disregard; and

      d. COUNTER-PLAINTIFF is incompetent in his profession as a real estate business specialist and in his management of his businesses.

   2. COUNTER-DEFENDANT'S malicious statements were directed at COUNTER-PLAINTIFF'S businesses, business practices and reputation in South Florida.

   3. COUNTER-DEFENDANT'S statements subjected COUNTER-PLAINTIFF to distrust and injured COUNTER-PLAINTIFF'S business and businesses reputation.

   4. COUNTER-DEFENDANT knew or was reckless in not knowing the foregoing statements were false.

   5. In so doing, COUNTER-DEFENDANT intentionally interfered with COUNTER-PLAINTIFF'S existing and prospective business relationships with the intent to

harm COUNTER-PLAINTIFF'S businesses.

6. As a direct, foreseeable and intended result of the COUNTER-DEFENDANT'S defamatory and slanderous interference, COUNTER-PLAINTIFF has been harmed.

7. COUNTER-DEFENDANT'S actions have damaged and continue to damage COUNTER-PLAINTIFF.

**WHEREFORE** COUNTER-PLAINTIFFs, THE SAM PERKS COMPANY, LLC D/B/A PERKS HOSPITALITY MANAGEMENT, SAMUAL J. PERKS, and DREW FONTENOT, respectfully requests that this Honorable Court enter judgment for damages, including but not limited to, compensatory and consequential damages against COUNTER-DEFENDANT, and award COUNTER-PLAINTIFF fees and costs incurred in this action pursuant to Fla. Stat. §57.105 or the Court's inherent authority and such other relief as this honorable Court may deem fair and just.

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this answer: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_____
SAMUAL J. PERKS

2-9-2021
_____
DATED

_____
DREW FONTENOT

2-09-2021
_____
DATED

_____
SAMUAL J. PERKS as Agent for THE SAM PERKS COMPANY, LLC

2-9-2021
_____
DATED

408 NE 6th Street
#214
Fort Lauderdale, FL 33304



THE
SAM PERKS
COMPANY, LLC

Sonia Badillo
Regional Manager-North Broward
150 NE 40th Street, Apt. 108
Oakland Park, FL 33334

08/18/2020

Dear Sonia Badillo:

I regret to inform you that your employment with The Sam Perks Company, LLC is being terminated, effective August 18, 2020. Your employment is being terminated for the following reasons:

-Repeatedly Tardy

You were issued written warnings, including but not limited to warnings for the termination reason listed above, on 07/14/2020. We have on file, copies of these warnings, signed by you and which have been placed in your personnel file. Each warning issued indicated the existing problem at the time which was discussed with you and your supervisor, the steps which needed to be taken to improve your performance, and then signed off by you at the end of each warning discussion. As stated in your final written warning notice, further infractions of the Company's attendance policy within 60 days would initiate immediate termination of employment. Your failure to correct the issues after employee counseling, verbal warnings, and written warnings, has resulted in termination of your employment with the Company.

This termination of employment is defined by the company as "Discharge of Employee With Cause." citing Section 7a(iii) of your employment contract dated April 8, 2020. As per your employment contract, you are entitled to be paid your full salary through the date of termination, and any earned but unpaid bonuses scheduled by your bonus plan. Those amounts are outlined as follows:
**Salary: $342.31**
**Retail Sales Bonus: $8.20**
**Insurance/Damage Waiver Bonus: $63.97**
**Laundry Services Bonus: $0.00**
**Delivery Services Bonus: $0.00**
**Total Compensation Due: $414.48**

The aforementioned total compensation due does not account for mandatory tax withholding obligations of the employer, or any costs you may owe to the Company for services purchased from or through the Company.

1



A



Further, the company is voluntarily offering the following discretionary terms:
1. The Company will continue to pay for your residence at Honu Cove Hotel through Friday, August 21, 2020 at 11:00 AM.
2. The company will maintain the connection of your company issued cellular phone line and any applicable data plans that service any device you have purchased for personal use through a company owned account; and, keep open the account for your cellular device rental and tablet device rental; and, waive the company's right to collect those devices from you upon termination; and, allow you to retain those devices as your own property.
3. The company will process all bonuses earned but unpaid up to the date of termination at your next weekly scheduled pay date, which will be Friday, August 21, 2020.

The above voluntary, discretionary offerings from the company are contingent upon the following:
1. Upon receipt of this notice, you must sign a customary general release in favor or the Employer. The release is included with this notice.
2. You must agree to avoid any unnecessary communication with any current employees of The Sam Perks Company, LLC effective immediately.
3. You must agree to avoid any unnecessary communication with any current or former customers and/or clients of The Sam Perks Company, LLC effective immediately.
4. You must arrange for the full transfer of your company cellular phone device service plan and associated device rental arrangement, and your tablet device data service plan and associated device rental arrangement to your own custody within ten (10) days. Drew Fontenot will assist you with any necessary transfer documentation and guidance that you may need.
5. You must immediately surrender all company-owned property which may be in your possession including, but not limited to, books, records, documents, keys, materials, tools, or any other tangible or intangible property owned by the company and in your possession. If you are unable or unwilling to transfer the company cellular phone device service plan and associated device rental arrangement, and your tablet device data service plan and associated device rental arrangement to your own custody and control within ten (10) days, you will be personally responsible for returning those devices to Sam Perks or Drew Fontenot at Honu Cove Hotel, on or before ten (10) days from the signing of this document. You also agree to waive any claim of compensation for loss associated with the devices, assets, products, and/or services mentioned in this paragraph.
6. You must, from the time you receive this notice, comply with and abide by Section 8 of your employment contract, which reads as follows:

> ***Disclosure of Information.*** *Employee agrees that Employee will not, during employment or any time after termination of employment hereunder, without authorization of Employer, disclose to, or make use of for Employee or for any person, corporation or other entity, any files, videos, trade secrets, papers, photographs, presentations, recipes, specifications, drawings, salary structures, sources of income, business plans, minutes of meetings, contractual arrangements, or other confidential information concerning the business, clients, methods, operations, financing or services of Employer. Trade secrets and confidential information shall mean information disclosed to Employee or known by Employee as a consequence of employment by Employer, and not generally known to the hospitality industry.*

2



7. You must, from the time you receive this notice, comply with and abide by Section 9 of your employment contract, which reads as follows:

<u>Non-Compete.</u>

a. In further consideration of the compensation to be paid to Employee hereunder, Employee acknowledges that in the course of employment with Employer and its Subsidiaries and Affiliates Employee shall become familiar, and during employment with Employer has become familiar, with Employer's trade secrets and with other Confidential Information concerning Employer and its predecessors and its Subsidiaries and Affiliates and that Employee's services have been and shall be of special, unique and extraordinary value to Employer. Therefore, Employee agrees that during employment and for a period of three years following termination of employment for any reason (hereafter referred to as the "Non-compete Period"), Employee shall not directly or indirectly own any interest in, manage, control, participate in, consult with, render services for, or in any manner engage in any business or enterprise identical to or similar to any such business which is engaged in by Employer, its Subsidiaries or Affiliates or any of their respective franchises, which shall include any hotel business or hotel management business that derives more than 25% of its revenues from hotel lodging sales, hotel retail, hotel amenities package implementation, hotel housekeeping, hotel maintenance and security services, insurance, property maintenance services, vacation rental management, and/or any hospitality business service provided by Employer during the term of this agreement (the "Business"), as of the date of this Agreement and which is located in the State of Florida, and operates in Broward, Palm Beach, Miami-Dade, and Collier Counties. Nothing herein shall prohibit Employee from being a passive owner of not more than 2% of the outstanding stock of any class of a corporation that is publicly traded, so long as Employee has no active participation in the business of such corporation. This restriction will not apply if Employee is employed as an officer of a business, including, but not limited to, a casino, that as an ancillary service provides services as defined in this paragraph. The term "ancillary" assumes that less than 50% of the business revenues are derived from its hospitality services.

b. During the Non-compete Period, Employee shall not directly or indirectly through another entity (i) induce or attempt to induce any non-hourly or management employee of Employer or any Subsidiary or Affiliate to leave the employ of Employer or such Subsidiary or Affiliate, or in any way interfere with the relationship between Employer or any Subsidiary or Affiliate and any employee thereof, (ii) hire any person who was an employee of Employer or any Subsidiary or Affiliate at any time during the Employment Period, unless such person responded to a general solicitation, or (iii) induce or attempt to induce any customer, supplier, licensee, licensor, franchisee or other business relation of Employer or any Subsidiary or Affiliate to cease doing business between any such customer, supplier, licensee or business relation and Employer or any Subsidiary or Affiliate (including, without limitation, making any negative, derogatory or disparaging statements or communications regarding Employer or its Subsidiaries, Affiliates, employees or franchisees).

3



If you wish to accept the terms of the aforementioned voluntary, discretionary offerings from the company, and if you agree to the associated contingencies, and agree to be bound by those contingencies, and you agree to be held personally liable for any failure to comply with or abide by those contingencies, please sign below to indicate your acceptance and return one (1) of the two (2) copies of this letter that have been provided. The other copy is for your records.

I accept the terms and contingencies of the aforementioned voluntary, discretionary offerings from the company:

_____     _____
Sonia Badillo                                                Date   8/18/2020

Return of Company Property:

❑ Honu Cove Office Key

❑ Honu Cove Laundry Key

❑ Other_____

❑ Other_____

❑ Other_____

❑ Other_____

_____     _____
Signature of Authorized Representative for the Company   Date   8-18-2020

4

Printed: September 11, 2020

## Calls For Service Report

| | |
|---|---|
| **Call ID:** *122009000076* | **Case #:** *12-2009-000076* |
| **Agency**<br>**BROWARD COUNTY SHERIFF`S OFFICE** | **Person Received Complaint**<br>**JOASIL LEO, M. J.** |

| Date / Time Received | Time Dispatched | Time Arrived | Time Complete |
|---|---|---|---|
| **09/01/2020   14:09** | **14:28** | **14:30** | **15:11** |

**Nature of Incident**
**POLICE SERVICE CALL**

**Location of Incident**
**150 NE 40TH ST 108, OAKLAND PARK**

**Victim or Caller**
*1 - 911 Caller*

| Classification | How Received | Disposition |
|---|---|---|
| | **OTHER** | **NO WRITTEN REPORT** |

| Officer | Date Submitted |
|---|---|
| **MANERA, A.** | **09/01/2020** |

**Assisting Officers**

---

**Notes:**  Nature Code: 68
 Disposition: B
PROBLEM: WANTS PD TO RESPOND TO RECOVER STOLEN ITEMS

DISPATCH LEVEL: 128B01 (FOUND EVIDENCE)

1. INCIDENT TYPE: STOLEN REPORT
3. FOUND EVIDENCE INFO.
2. ORIGINAL CASE #: 10-2008-004779
4. EVIDENCE DESC: SAMSUNG GALAXY NOTE 10 CELL PH...SLATE 8INCH TABLET VEHICLE 1 INFO
-- DESCRIPTION: REPORTING PARTY
-- COLOR: BLK
-- MAKE: JEEP
-- MODEL: WRANGLER Vehl 1|:
Description: Reporting party CLR ADV 51...ETA 10MNS FAU 12Y1 Dup: 2ND CALL.. COMPL  1097.. 1004 (12/12B4) 1004 (12/12B4) 1004 (12/12B4) 1004 (12/12B4) 1066 1036 12B4: CONTACT MADE WITH SAM PERKS WHO ADVISED HE WAS REQUESTING A STAND BY WHILE HE ATTEMPTS TO REQUEST BACK PROPERTY FROM A FORMER EMPLOYEE SONIA. SONIA REFUSED TO SPEAK WITH DEPUTIES AND INSTEAD CONTACT WAS MADE WITH HER EX-BOYFRIEND WHO REFUSED TO PROVIDE HIS NAME. HE STATED THAT SONIA IS REFUSING TO RETURN THE PROPERTY DUE TO SHE BELIEVES THAT SHE IS THE OWNER OF THE PROPERTY AND ALSO THAT PERKS OWES HER FOR TWO WEEKS OF WORK. SONIA`S EX STATED THAT THEY WERE WILLING TO TAKE THE MATTER TO COURT AND ARE AWAITING TO BE CONTACTED FOR A COURT DATE. PERKS WAS ADVISED THAT AT THIS TIME THERE WAS NO PC FOR ARREST AND THAT HE WOULD NEED TO RETURN BACK TO DEERFIELD AND FILE ANOTHER REPORT OR MAKE CONTACT WITH A DETECTIVE TO FOLLOW UP ON THE INITIAL REPORT THAT HE FILED. NFI BWC 18427

